**PLAYBOY RENT-A-CAR, INC.,**

a Virgin Islands corporation, Plaintiff

v.

**THE CONTINENTAL INSURANCE CO.,**

a corporation, Defendant

Civil No. 221-1969

District Court of the Virgin Islands

Div. of St. Thomas and St. John

November 17, 1969

*See, also, 7 V.I. 184*

MᶜGOWAN, LOUD, CAMPBELL & DENNENBERG, ESQS. (GERALD DENNENBERG, ESQ., of counsel) *for plaintiff*

BAILEY, WOOD & ROSENBERG, ESQS. (FREDERICK D. ROSENBERG, ESQ., of counsel) *for defendant*

ALMERIC L. CHRISTIAN, *Judge*

## OPINION

In this action for damages for breach of contract, PLAY-BOY RENT–A–CAR, INC. (hereafter called Playboy) brought suit in the Municipal Court of the Virgin Islands, Division of St. Thomas and St. John, against its insurer THE CONTINENTAL INSURANCE CO. (hereafter

called Continental) to recover sums expended by Playboy in defending a tort action brought against it by one Carlton Turnbull (hereafter called Turnbull), 7 V.I. 184.

The case was submitted to the Municipal Court, sitting at Part I, on an agreed statement of facts, consisting of the contract of insurance between Playboy and Continental, and several exchanges of correspondence between the parties and their agents, officers, and attorneys.

Playboy, a corporation engaged in the car rental business, entered into a contract of insurance with Continental, effective December 23, 1967. The contract provided third-party liability coverage, among other things. Under the terms of the contract, Playboy was one of the "insureds". Any rentee of Playboy was likewise covered as another of the "insureds".

On February 27, 1968, Turnbull, a rentee of Playboy, brought suit against that corporation for personal injuries which he suffered in the course of his operation and use of a rented vehicle. It appears that Turnbull suffered the injuries of which he complained when the radiator of the rented car exploded, scalding him with hot water. He alleged negligence on the part of Playboy, the renter of the car.

On January 23, 1968, an adjuster for Continental wrote to Playboy, asserting that the Turnbull accident was not covered by the policy, and advising Playboy to retain an attorney to defend itself in any court action. It is conceded that once the suit was filed, Continental was timely notified and requested to come forward and defend against the suit. Continental at first stood firm on its initial position, that there was no liability under the insurance contract, and that Playboy would have to engage counsel of its own, in its defense. After some further exchange of correspondence, Continental wrote to Playboy's counsel, saying in part,

"Although there is no coverage for this type of case \*\*\*, \*\*\* please refer suit papers to our local defense counsel Bailey & Wood."

From subsequent correspondence, it appears that Continental declined to pay Playboy's attorney for his services in the interim. There was also additional correspondence seeking clarification of Continental's position. In any event, the papers were never turned over to Baily & Wood, Playboy was represented by its attorney, it prevailed in the suit, and now seeks to recover its fees and costs.

The sole issues before the trial court—and indeed the only issue for review here—was whether or not, under the terms of the contract of insurance, Continental was obliged to provide and pay for Playboy's defense. The court below entered judgment against Playboy, dismissing its complaint, finding that "\*\*\* the claim on which the Turnbull action was based was not within the coverage of the insurance contract, and therefore no breach of contract resulted", (Trial Court Opinion, Page 5), and that since Continental was not "\*\*\* bound to defend \*\*\*, the insured was not entitled to attorney's fees incurred \*\*\*", (Trial Court Opinion, P. 6). I disagree with the Municipal Court's interpretation of the contract, and reverse its judgment.

The trial court correctly pointed out that, generally, defendant's obligation to pay "\*\*\* all sums which the insured shall become legally obligated to pay as damages because of bodily injuries \*\*\*" referred to third-party liability, thus barring an "insured" from recovery for bodily injuries to himself growing out of his own operation of the covered vehicle. The court erred, however, in accepting Continental's contention that this is necessarily so in all cases.

Under "Conditions", paragraph "6" provides:

"SEVERABILITY OF INTERESTS—COVERAGES A AND B.

"The term 'the insured' is used severally and not collectively, but the inclusion herein of more than one insured shall not operate to increase the limits of the company's liability."

"Coverage A" referred to above reads:

"COVERAGE A—BODILY INJURY LIABILITY.

"To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury, sickness or disease, including death at any time resulting therefrom, sustained by any person, caused by accident and arising out of the ownership, maintenance or use of the automobile."

■ As I read and interpret these two provisions, I understand the contract to say, as to Turnbull, for example, that there can be no recovery for bodily injuries by you an "insured", by reason of your operation of the vehicle, but, since your interests are severed from those of the other "insured", the renter, if he breaches a duty towards you, as a result of which you suffer bodily injuries in the use of the rented vehicle, as to that "insured" you are a third party and may recover under the contract. This interpretation is in line with numerous cases which so hold. See Howe v. Howe, 87 N.H. 338, 179 A. 362 (1935); Archer v. General Casualty Co., 219 Wis. 100, 261 N.W. 9 (1935). While there are recorded holdings to the contrary, the interpretation to which this Court subscribes has been followed "*** In the greater number of cases ***". See 7 Am. Jur. 2d, Automobile Insurance, sec. 128.

The type of accident which allegedly injured Turnbull, has, in a number of instances, been held to be within a liability policy covering damage resulting from the "maintenance or use" of the automobile. See 7 Am. Jur. 2d, Auto. Ins., sec. 86; Roche v. U.S. Fidelity & Guaranty

609

Co., 247 App. Div. 335, 287 N.Y.S. 38, affirmed 273 N.Y. 473, 6 N.E.2d 410; Red Ball Motor Freight, Inc. v. Mutual Liability, Ins. Co.; Anno. 171 ALR 501.

■ In any event, this Court is not here called upon to decide the liability of the defendant company to Turnbull under the terms of its policy of insurance, but rather, whether, in these circumstances, defendant was obligated to defend the plaintiff herein in the suit brought against it by Turnbull. Roche v. U.S. Fidelity & Guaranty Co., supra; Red Ball Motor Freight, Inc. v. Mutual Liability Ins. Co., supra, and the annotation and text cited in connection therewith, establish that the type of accident, which Turnbull claimed was the cause of his injuries falls within the coverage of this type of policy. All of the foregoing considered, and coupled with a policy which provided that,

"*** the company shall:
"(a) defend any suit against the insured against such (bodily) injury *** and seeking damages on account thereof, even if such suit is groundless, false, or fraudulent; ***,"

I find the conclusion inacceptable, that defendant in this action was required, under the terms of its contract, to defend this plaintiff in the suit brought against it by Turnbull.

■ The outcome of the action brought by Turnbull is of no consequence. It is his claim of injury and the allegations of his complaint that are to be considered in fixing the obligation to defend or not to defend. Indeed, even before decision in the Turnbull case was rendered, counsel for this defendant wrote to it, by letter dated May 23, 1968, expressing confidence that by reason of a statement made by Turnbull, recovery would be denied him "*** on the theory of contributory negligence ***". Counsel may have gone astray in suggesting that defend-

ant stand pat as, with the dismissal of Turnbull's complaint, its "involvement" would become "academic".

■ Alternatively, defendant urges that if it were required to provide defense, it offered to do so, and that plaintiff failed to accept its offer. This contention flies in the face of the record. Defendant, in explicit, unequivocal language, stated to plaintiff, that it was not covered by the policy, and that it would "*** have to retain an attorney to answer the summons and complaint, and to defend you in any court action." (Letter of January 22, 1968, defendant's adjuster to the President of plaintiff corporation.) When plaintiff, still insisting that it be defended by defendant, complied with this direction, considerably more than defendant's somewhat insidious missive of June 13, 1968, supra, was required to constitute notice of its readiness and willingness to defend.

Reversed and remanded with direction to enter judgment in favor of plaintiff.